In The United States District Court
For The District of Nebraska

United States of America,
                    Plaintiff

vs.

Terry L. Baldwin,
              Defendant

Case No:

4:07-cr-03001

Motion For Review of Conviction
Under Machibroda v. United States

Comes Now, Terry L. Baldwin, the Defendant hereby respectfully

moves the Court to review his conviction on charges of Production

and Possession of Child Pornography. Defendant asserts that his

plea of guilty with regards to the above charges was not voluntary

in that it was predicated on threats by the Government to bring

additional counts against the Defendant if he did not sign the

RECEIVED

MAY 1 3 2025

CLERK

1

plea agreement; threats communicated to him by his attorney, Carlos A. Monzon;

and by promises of a plea agreement that was either fabricated or breached

Defendant alleges that his Fifth, Sixth and Fourteenth Amendment rights of

Due Process and Assistance of Counsel were violated by Assistant United

States Attorney, Steven A. Russell, who through Defendant's attorney, threatened

to "take your case before the Grand Jury and request that additional

counts be filed against you"; or by Defendant's counsel, who communicated

a false plea agreement, as well as the above threat to the Defendant in a

letter dated March 10th, 2008. Defendant also asserts, and the record

will show, that it was because of this letter that he ultimately chose

to accept the plea agreement and plea guilty. Finally, Defendant

asserts that the sentencing Judge Richard G. Kopf, abused his discretion

by accepting a plea that he knew was not voluntary.

## Background

On January 18th, 2007, Defendant was charged with one count of Possession of Child Pornography, in violation of 18 U.S.C. §2252(a)(4)(B), and a forfeiture count. Then, on March 22nd, 2007 the Government filed a Superseding Indictment alleging three counts of Production of Child Pornography, in violation of 18 U.S.C. §2251(a) and 2; and one count of Possession of Child Pornography, in violation of 18 U.S.C.§2252(a)(4)(B); and a forfeiture count.

In May, 2007, the Defendant's attorney, John Vanderslice, presented the Defendant with a tentative plea agreement identical to the final plea agreement signed by the parties on March 14th, 2008; however, the Defendant did not sign this initial plea agreement.

3

Rather, he informed Mr. Vanderslice that the plea agreement contained errors contained errors and that he would not sign it unless those errors were corrected. This conflict would result in the Defendant contacting the Nebraska Bar concerning Mr. Vanderslice's refusal to do anything about the errors, as well as Mr. Vanderslice's withdraw from the case.

On January 9th, 2008 at a Change of Plea hearing before Magistrate Judge David L. Piester, the Defendant informed the Court that he did not intend to sign the plea agreement.

Following this initial Change of Plea hearing, at both Change of Plea hearing before Judge Kopf on March 14th, 2008 and the Sentencing hearing originally held on May 30th, 2008, the Defendant repeatedly stated that he either did not wish to plea guilty or wished to withdraw his plea so much so that, at the initial

4

Sentencing hearing, Judge Kopf commented that :

"It seems to me that I should never accept a plea agreement

where a man is saying I will do 25 years in prison."

## Appeal Waiver

The final plea agreement, signed by the parties on March 14th, 2008,

contained a provision stating :

"The Defendant hereby knowingly and expressly waives any and

all rights to appeal the Defendant's conviction in this case,

including a waiver of all motions, defenses, and objects which

the Defendant could assert to the charges or to the Court's

entry of judgement against the defendant, including review

pursuant to 18 U.S.C. § 3742 of any sentenced imposed. The

Defendant further knowingly and expressly waives any and

5

all rights to contest the Defendant's conviction in any post-conviction

proceedings under 28 U.S.C. § 2255, except:

(a) The right to timely challenge the Defendant's conviction and

the sentence of the Court should the Eighth Circuit Court of

Appeals or the United States Supreme Court later find that

the charge to which the Defendant is agreeing to plead guilty

fails to state a crime.

(b) The right to seek post conviction relief based on ineffective

assistance of counsel, or prosecutorial misconduct, if the

grounds for such claim could not be known by the

Defendant at the time Defendant enters the guilty

plea contemplated by this plea agreement."

Defendant does not contend the current motion falls within the scope of the plea agreement. Rather, Defendant contends that the provision does not bar him from challenging the voluntariness of his plea.

Under the Eighth Circuit Court of Appeals ruling in De Roo v. U.S. 223 F.3d 919 (2000), "A Defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel." That De Roo remains relevant and good law is evident from the Appellate Court's decision not to enforce a plea waiver in U.S. v. Thompson, 2013 WL 2318007 at *21 (2013) because "Thompson did not waive an appeal challenging the

voluntariness of his plea." (U.S. v. Schneider, 40 F.4th 849 (8th Cir. 2022),

which determined that "Schneider's waiver of appellate rights is like

the waiver in Thompson - it does not specifically waive an appeal

challenging the voluntariness of his plea."

Ultimately, the ruling in DeRoo is applicable to the Defendant's case

as it was the Eighth Circuit precedent at the time when the Defendant

entered his plea in 2008. As Defendant's appeal waiver, like Schneider,

did not specifically waive his right to challenge the voluntariness of

his plea, the Defendant did not, in fact, waive this right.

Defendant did challenge the voluntariness of his plea on Direct Appeal

however, the Eighth Circuit affirmed the judgement of the District Court

on the grounds that the appeal waiver precluded Defendant from

seeking post-conviction relief except for the reason stated above

and found that his plea was knowing and voluntary. Defendant filed a 2255 Motion with the District Court challenging, among other things, the voluntariness of his plea. This motion was denied without an evidentiary hearing on the grounds that he was not, based on the record, entitled to relief.

Defendant now asserts that at the time he entered his plea he had proof that his plea was not, in fact, voluntary; however, this proof was not presented to the Courts at the time, nor was it presented to the Eighth Circuit on Direct Appeal, nor the District Court in Defendant's 2255 motion because the Defendant did not know at the time he entered his plea nor could he have had reason to know without effective counsel that a violation of his Fifth, Sixth and Fourteenth Amendments rights of Due Process were violated.

9

## Involuntariness of Plea

On March 10th, 2008, Defendant recieved a letter from his attorney, Mr. Monzon, informing him of a "new plea offer" extended by the Government (see Attached #1). The plea offer presented in this letter is materially different from the one signed by the parties on March 14th, 2008.

For example, in the original (and final) plea agreement, the parties agreed that as to Count I of the Superseding Indictment, Defendant was subject to enhancements under U.S.S.G. § 2G2.1(b)(1)(A), 2G2.1(b)(2)(A), 2G2.1(b)(3), and 2G2.1(b)(4); however, in the offer presented in Mr. Monzon's letter, the only enhancements applied to Count I were 2G2.1(b)(1), 2G2.1(b)(2)(A), 2G2.1(b)(3), 2G2.1(b)(5).

While both offers include enhancements under 2G2.1 (b)(2)(A) and

2G2.1 (b)(3), the offer presented in the letter has enhancements not

included in the final plea agreement (i.e. 2G2.1(b)(1) and 2G2.1(b)(5)),

and the final plea agreement has enhancements not included in the

offer contained in Mr. Monzon's letter (i.e. 2G2.1(b)(1)(A) and 2G2.1(b)(4).

The difference in those two plea offers becomes ever starker

when considering the enhancements applied to Count IV.

In the final plea agreement, the parties agreed that the

Defendant was subject to enhancements under U.S.S.G. §

2G2.2(b)(2), 2G2.1(b)(3)(F), 2G2.1(b)(4), and 2G2.1(b)(5), 2G2.2(b)(6)

and 2G2.2(b)(7)(D) and that, after acceptance of responsibility,

Defendant had a total offense level of 35; meanwhile, the plea

offer contained in Mr. Monzon's letter included enhancements

under U.S.S.G. § 2G2.2(b)(2), 2G2.2(b)(3)(F), 2G2.2(b)(5), 2G2.2(b)(6) and 2G2.2(b)(7)(D).

Allowing for the typos in the final plea agreement (See PSR, paragraphs 133), the only difference between the two is the inclusion of 2G2.2(b)(4) in the final plea agreement — an enhancement that is lacking in the offer contained in Mr. Monzon's letter.

That said, the absence of that enhancement in that offer resulted in a 4 level reduction in Defendant's total offense level after acceptance of responsibility for a total of 31 rather than the final plea agreement's 35.

This translates to Defendant being subject to between 5 to 6.25 years more imprisonment under the final plea agreement.

The significance of this becomes clear when one considers the statements made by Mr. Monzon concerning the letter he sent to the Defendant on March 10th, 2008 at the March 14th, change of plea hearing.

According to Mr. Monzon, "It is based on this letter and conversation with Mr. Baldwin that Mr. Baldwin has agreed to enter a plea of guilty." (see Filing 103, pg. 30, lines 20-22).

Given the differences between the two plea offers, if the Defendant chose to plea guilty based on the plea offer contained in Mr. Monzon's letter, then he was promised on agreement that was materially different then what was in the plea agreement by his attorney, who characterized it in the letter as an offer by the Government. (See Attached #1)

13

"A decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside the range of competence demanded of attorneys in criminal cases." (DeRoo v. U.S. 223 F.3d 919 (8th Cir. 2000)) see also Hill v. Lockhart, 474 U.S. 52, 56, 88 L. Ed 2d 203, 106 S.Ct. 366 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771, 25 L. Ed 2d 763, 90 S.Ct. 1441 (1970).

Since the letter from Mr. Monzon characterizes the information contained therein as a plea offer, and it is materially different from the plea agreement signed by the parties on March 14th 2008, either Mr. Monzon misrepresented the Government's offer (presenting the Defendant with a false offer) or the Government switched the plea agreement on March 14th, 2008.

14

If the first is the case, then Mr. Monzon's misrepresentation of the Government's offer surely constitutes "advice outside the range of competence demanded of attorneys in criminal cases."

If the latter is the case, then either the Government misled Mr. Monzon or they switched the plea agreements on March 14th. Either way, such conduct surely constitutes Prosecutorial Misconduct. In either case, the Defendant's decision to enter into the plea agreement could not have been knowing and voluntary.

Furthermore, it has long been established that a "guilty plea, if induced by promises or threats which deprives it of the character of a voluntary act, is void and open to collateral attack." (see Machibroda v. U.S. 368 U.S. 487, 7 L.Ed 2d 473, 82 S.Ct 510) (1962).

It has also long been established that "a guilty plea is rendered voidable by... threatening to bring additional prosecutions." (see Santobello v. New York, 404 U.S. 257, 30 L.Ed 2d 427, 92 S.Ct. 495) (1971).

Given these facts, it is of considerable importance that in the March 10th letter, which the Defendant recieved from his attorney, Mr. Monzon informed the Defendant that "The Government is prepared to take your case before the Grand Jury and request that additional counts be filed against you."

This statement coupled with the proffered false plea offer above, compelled the Defendant to accept the plea agreement, and enter a guilty plea at the Change of Plea hearing on March 14th, as pointed out by Mr. Monzon (on the record) during that hearing.

## Standard of Review

The standard of review for the Defendant's ineffective assistance of counsel claim is de novo. That de novo review is the appropriate standard in this case is evident from the following facts: 1) In his denial of Defendant's 2255 Motion, Judge Kopf mentions that before he accepted the plea agreement, but after Defendant first tendered his guilty plea, the Defendant had filed a 37-page pro-se motion alleging, among other things, that his counsel was ineffective for pressuring him to enter a guilty plea. This statement by Judge Kopf clearly demonstrates that the Defendant had, in fact, brought both his ineffective assistance of counsel claim and his involuntary plea claim up before the District Court prior to actually entering his plea and before it was accepted by the Court.

Had the Court addressed these claims at that time, the standard of review would most certainly have been de novo, not plain error.

2). The District Court failed to hold an evidentiary hearing on the Defendant's claims. Yet, as a matter of law, a claim of ineffective assistance of counsel is a ground for post-conviction relief under 28 U.S.C. 2255 and "a denial of a 2255 motion without an evidentiary hearing is reviewed de novo and affirmed only if the motion, files, and record conclusively show that the movant is not entitled to relief. (See DeRoo v. U.S. 223 F.3d 919 (8th Cir. 2000). This ruling implies that the proper procedure to be followed when a Defendant makes an ineffective assistance of counsel claim is to hold an evidentiary hearing to determine the validity of the claim.

18

Either such claims can only be made as part of a 2255 motion, meaning that they need not be raised beforehand, or they can be made at any time during the pre-conviction proceedings. If the former is the case, then the District Court's ruling denying the Defendant's 37 page pro-se motion was inappropriately denied, particularly since it was denied without an evidentiary hearing, thus denying the Defendant an opportunity to seek appellate review of the denial and present evidence supporting his claim and denying the Defendant his rights to Due Process and effective assistance of counsel under the Fifth, Sixth and Fourteenth Amendments. If the latter is the case, than an evidentiary hearing should have been held to determine if the Defendant's claims were valid. A failure to do so, particularly in light of the Defendant's repeated assertions regarding his counsel's ineffective

assistance, undoubtedly prejudiced the Defendant as it effectively

denied him the counsel of his choice by forcing him to proceed

with a counsel that he had claimed was ineffective, a denial

that, according to the U.S. Supreme Court in U.S. v. Davila,

569 U.S. 597, 186 L.Ed 2d 139, 133 S.Ct. 2139 (2013), constitutes a

structural error triggering automatic reversal because it undermines

the fairness of a criminal proceeding as a whole. It should be

noted that in his Memorandum and Order denying Defendant's

court-interpreted motion to appoint substitute counsel (See Filing 49-1),

Magistrate Judge Piester specifically and falsely, stated that

"The defendant is not entitled under the Sixth Amendment to

counsel of his own choice, unless he hires his attorney himself."

The Sixth Amendment does not, in fact, say anything about a defendant having to hire his own attorney. Rather, it says that "the accused shall enjoy the right ... to have the assistance of counsel for his defense."

Furthermore, nothing in the Supreme Court's rulings on structural errors limits a defendant's right to "counsel of his choice" or to have counsel that the Defendant hires himself.

This means that Judge Piester's denial of the Defendant's request for new counsel undermined the fairness of all proceedings that followed, and knowing this, Mr. Monzon should have voluntary withdrawn from the case. At the very least, Mr. Monzon would have more effectively assisted the Defendant had he challenged the judge's denial as a structural error at the time and advised the Defendant to raise the matter on appeal.



3) A Defendant's plea agreement waiver of the right to seek 28 U.S.C.

2255 post conviction relief does not waive Defendant's right to argue,

pursuant to that section, that his decision to enter into the plea

agreement was not knowing and voluntary because it was the result of

ineffective assistance of counsel" (see De Roo v. U.S, supra.) Thus, the

District Court's attempt to deprive the Defendant of the right to make

such a claim (see Filing 108, pg.20, Lines 6-12), as well as the

Government's efforts to limit the Defendant's ability to seek post-

conviction relief based on ineffective assistance of counsel to only those

grounds which he could not have known at the time he entered his

guilty plea (see Plea Agreement), violates Eighth Circuit precedent; deprives

the Defendant of his Fifth and Fourteenth Amendment rights to Due

Process, and undermines the fairness and integrity of judicial proceedings.

22

All of these facts plainly demonstrate that the Defendant is entitled to a de novo review of his ineffective assistance of counsel and involuntary plea claims; however, given all of these facts, the Defendant clearly satisfies all of the criteria to prevail on plain error review as well.

For one, Judge Kopf's denial of Defendant's involuntary plea and ineffective assistance of counsel claims without an evidentiary hearing is error. In addition, his acceptance of a plea that he himself knew was not involuntary, and his appointment of stand-by-counsel to advise the Defendant on the efficacy of accepting the plea agreement despite the Eighth Circuit's strict requirement that the District Court can only accept or reject an 11(c)(1)(C) plea agreement is error.

Likewise, Judge Piester's memorandum and order denying the Defendant counsel of his choice constitutes not just error, but structural error.

Finally, the efforts made by Judge Kopf to deny the Defendant's right to challenge the effectiveness of his counsel, and the right to challenge the voluntariness of his plea, is error. Second, the numerous Eighth Circuit and Supreme Court rulings on these issues, dating from back before the Grand Jury indicted the Defendant in January 2007, is more than sufficient to demonstrate that each of each of these errors are plain. Third, as each of these issues deprived the Defendant of his Fifth, Sixth and Fourteenth Amendment rights to Due Process by preventing him from either challenging the errors of the court or seeking adequate assistance and, ultimately,

forced the Defendant to enter into a plea agreement that, even as

late as the initial sentencing hearing, the Defendant had not wanted

to enter into, there can be no doubt that these errors affected

the Defendant's substantial rights and undermined the fairness and

integrity of the judicial proceedings, especially since Judge Piester's

denial of the Defendant's right to counsel of his choice is a

structural error triggering automatic reversal.

Finally, the fact that at the initial sentencing hearing, the

Defendant sought once more to withdraw his plea and go to trial

(a decision that he only chose not to pursue after court-appointed

stand-by-counsel told him that none of his concerns mattered)

plainly demonstrates that, but for Counsel's and the Court's

ineffective assistance and errors, respectively, the Defendant would have

chosen to go to trial.

## Conclusion

In conclusion, the Defendant requests that the Court review his conviction based on the claims and evidence of ineffective assistance of counsel and involuntariness of his plea presented above. Defendant asserts that a full review of the record in this case, coupled with the documents attached to this motion, will establish the validity of his claims. Finally, should the Court find that the Defendant's claims are valid and that he is entitled to relief, Defendant asserts that the proper relief in this case is to vacate his conviction and discharge him, particularly since the Supreme Court has ruled that denying the Defendant counsel of his choice is structural error triggering automatic reversal.

Respectfully submitted,

Date: May 5th, 2025

Terry L. Baldwin #21117-047



# Monzón Law, P.C., L.L.C.

## *Carlos A. Monzón*

### *Attorney at Law*

March 10, 2008

Mr. Terry Baldwin, Inmate
Saline County Jail
P.O Box 911
Wilber, NE 68465

Re: U.S. v. Terry Baldwin, 4:07CR3001

Mr. Baldwin:

It is obvious that the United States government does not want to proceed with a trial where they will be showing video depictions of what they allege is you digitally penetrating your minor son's anus. Likewise, the government does not want to show video depictions of sexual acts between you and your minor daughter.

The government does not want to be in the position to have a trial where your children would have to re-live the sexual acts that are depicted on photographs and video tapes. The government believes that your children have suffered enough and that there is no good reason to make them endure more degradation, suffering and victimization.

For said reason, the government has contacted me and informed me of the following offer:

1.      You will plead under the Superseding Indictment to Count V, forfeiture;

2.      You will plead under the Superseding Indictment to either Counts I, II or III, production of child pornography*. These counts carry a mandatory minimum sentence of 15 years and a maximum of life imprisonment. You may choose to which count you wish to plead guilty to; and

3.      You will plead guilty under the Superseding Indictment to Count IV, possession of child pornography. This count carries a sentencing range

---

* The Government is adamant that your will plead guilty to conduct which involves either your son and/or daughter. The Government is not making this offer as to conduct involving Jake Jarosz

650 "J" Street, Suite 401 • The Mill Towne Building • Lincoln, NE 68508
Phone: 402.477.8188 • Fax: 402.477.8202 • MonzonLaw@aol.com •
www.MonzonLaw.com

March 10, 2008
Mr. Terry Baldwin
Page 2.

of up to 10 years in prison.

As part of this offer, the government is willing to stipulate and recommend, that whatever sentence the judge may pronounce, that it should run concurrent with the State sentence you are currently serving.

The 2006 Federal Sentencing Guidelines are applicable to your case as follows:

I.     Counts I, II and III, Production of Child Pornography; U.S.S.G. §2G2.2(c)(1) cross references the alleged conduct to U.S.S.G. §2G2.1, therefore, **Base Offense Level is 32;**

   a.   U.S.S.G. §2G.1(b)(1), Offense involved minor/minors who had not attained age of 12 years, **4 Level Increase;**

   b.   U.S.S.G. §2G.1(b)(2)(A), Offense involved the commission of a sexual act. **2 level increase;**

   c.   U.S.S.G. §2G.1(b)(3) Offense involved distribution of child pornography (your postings in Yahoo), **2 level increase; and**

   d.   U.S.S.G. §2G.1(b)(5), You were a parent/guardian of the children alleged to be the victims in this case, **2 level increase.**

   ADJUSTED OFFENSE LEVEL              42
   CRIMINAL HISTORY CATEGORY          I
   SENTENCING GUIDELINE RANGE         30 years to life imprisonment.

   **U.S.S.G. §3E1.1 (acceptance of responsibility) - 3**

   **TOTAL OFFENSE LEVEL              39**
   **SENTENCING GUIDELINE RANGE       23 yrs. 6 months to 26 yrs. 8 months.**

   e.   U.S.S.G. §2G.1(d), this guideline cross-references to U.S.S.G. §3D1.2   Under U.S.S.G. §3D1.2., the conduct for which you could be convicted is "specifically excluded from the operation of U.S.S.G. §3D1.2, *Groups of Closely Related Counts.*" As a consequence, the Court does not have to group the counts of conviction and therefore the counts you could be found guilty of and the sentences imposed could run consecutive to each other

March 10, 2008
Mr. Terry Baldwin
Page 3.

Specifically, this means that you could receive the above calculated sentences as to each, Counts I, II and III of the Superseding Indictment and that said sentences could run consecutive to each other.

In the alternative U.S.S.G. §3D1.4, provides that your Offense Level shall be increased by 3 Levels. That is because each victim in this case constitutes "a unit" for purposes of U.S.S.G. §3D1.4.

Brandon: Total Offense Level 40
Jaroz:    Total Offense Level 34

II  Count IV, Possession of Child Pornography;

    a.    U.S.S.G.§2G2.2(a)(1), **Base Offense Level 18;**

    b.    U.S.S.G.§2G2.2(b)(2), the alleged material involves pre-pubescent minors who had not attained the age of 12 years, **2 level increase;**

    c.    U.S.S.G.§2G2.2(b)(3)(F), distribution other than that described in subdivisions (A) through (E), **2 level increase;**

    d.    U.S.S.G.§2G2.2(b)(5), pattern of activity involving the sexual abuse or exploitation of a minor, **5 level increase;**

    e.    U.S.S.G.§2G2.2(b)(6), the offense involved the use of a computer or interactive computer service for the possession, transmission, receipt, or distribution of the material, **2 level increase;** and

    f.    U.S.S.G.§2G2.2(b)(7)(D), the offense involved 600 or more images, **5 level increase.**

| ADJUSTED OFFENSE LEVEL | 34 |
| CRIMINAL HISTORY CATEGORY | I |
| SENTENCING GUIDELINE RANGE | 12 yrs. 7 mths. to 15 yrs. 8 mths. inprisonment. |

**U.S.S.G. §3E1.1 (acceptance of responsibility) - 3**

March 10, 2008
Mr. Terry Baldwin
Page 3.

**TOTAL OFFENSE LEVEL**      **31**
**SENTENCING GUIDELINE RANGE**      **9 yrs. to 12 yrs. 7 months.**[2]

This letter should be self explanatory, however, feel free to contact my office with any questions you may have in reference to the Government's offer. As you can see their previous offer, which they have now withdrawn, was a better offer based upon the circumstances of your case.

I will continue preparing for trial, unless I hear otherwise from you. The Government is prepared to take your case before the Grand Jury and request that additional counts be filed against you. Based upon the non-grouping of counts discussion, above, this means that you could spend the rest of your life behind bars if convicted.

Please let me know if you have any questions.

Sincerely, I remain;

Carlos A. Monzon

---

[2] Discussion of U.S.S.G. §3D, above, is applicable to the herein state calculations.

Federal Correctional Institution
P.O. Box 7007
Marianna, FL 32447-7007



9589 0710 5270 1731 2947 34

Clerk of the Court
U.S. District Court
111 South 18th Plaza
Suite 1152
Omaha, NE 68102

✱ Legal
Mail

**RECEIVED**

MAY 1 3 2025

CLERK
U.S. DISTRICT COURT

